Slip Op. 19-31

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JINDAL POLY FILMS LIMITED OF INDIA (A.K.A. JINDAL POLY FILMS, LTD. (INDIA)), | |
| Plaintiff, | Before: Mark A. Barnett, Judge |
| v. | Court No. 18-00038 |
| UNITED STATES, | |
| Defendant. | |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's final results in the administrative review of the antidumping duty order on polyethylene terephthalate film, sheet, and strip from India.]

Dated:  March 11, 2019

Stephen W. Brophy, Husch Blackwell, LLP, of Washington, DC, argued for Plaintiff.  With him on the brief was Nithya Nagarajan.

Sonia Orfield, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant.  With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel on the brief was Kristen E. McCannon, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Barnett, Judge:  Plaintiff Jindal Poly Films Limited of India (a.k.a. Jindal Poly

Films Ltd. (India)) ("Plaintiff" or "Jindal") challenges certain aspects of the U.S.

Department of Commerce's ("Commerce" or "the agency") final results in the

administrative review of the antidumping duty order on polyethylene terephthalate film,

sheet, and strip ("PET film") from India.  *See Polyethylene Terephthalate Film, Sheet, and Strip from India*, 83 Fed. Reg. 6,162 (Dep't Commerce Feb. 13, 2018) (final results on antidumping duty admin. review; 2015-2016) ("*Final Results*"), ECF No. 18-4, and the accompanying Issues and Decision Mem., A-533-824 (Feb. 6, 2018) ("I&D Mem."), ECF No. 18-5;[1] Compl., ECF No. 6.  Plaintiff argues that Commerce's decision to deny Jindal two post-sale price adjustments to its home market sales lacks adequate explanation and analysis, is not supported by substantial evidence, and is contrary to law; Commerce unlawfully failed to issue a supplemental questionnaire to Jindal to seek additional information on the two post-sale price adjustments that Commerce denied; and Commerce violated Jindal's due process rights by depriving it of an opportunity to meaningfully comment on Commerce's preliminary results.  *See* Mot. for J. Upon the Agency R. Pursuant to USCIT Rule 56.2 of Pl. Jindal Poly Films Ltd. of India (a.k.a. Jindal Poly Films Ltd. (India)) and Mem. in Supp. of Pl.'s Rule 56.2 Mot. for J. on the Agency R. ("Pl.'s Br."), ECF No. 23; Confidential Reply of Pl. Jindal Poly Films Limited of India (a.k.a. Jindal Poly Films Ltd. (India)) ("Pl.'s Reply"), ECF No. 27.

Defendant United States ("Defendant" or "the Government") urges the court to sustain the agency's *Final Results*.  *See generally* Confidential Def.'s Resp. to Pl.'s Mot. for J. on the Agency R. ("Def.'s Br.") at 10-14, 17-23, ECF No. 26.  Defendant-

---

[1] The administrative record for this case is divided into a Public Administrative Record ("PR"), ECF No. 18-1, and a Confidential Administrative Record ("CR"), ECF No. 18-2. Parties submitted joint appendices containing record documents cited in their briefs. *See* Public J.A. ("PJA"), ECF No. 30; Public Suppl. J.A., ECF No. 42; Confidential J.A. ("CJA"), ECF No. 29, Confidential Suppl. J.A., ECF No. 41.  The court references the confidential versions of the relevant record documents, unless otherwise specified.

Intervenors DuPont Teijin Films, Mitsubishi Polyester Film, Inc., and SKC, Inc. did not

respond to Plaintiff's arguments.  *See* Letter to Court (Sep. 17, 2018), ECF No. 24.  The

court heard oral argument on February 13, 2019.  *See* Docket Entry, ECF No. 43.  For

the reasons discussed below, the court remands the *Final Results*.

BACKGROUND

Jindal was one of two mandatory respondents in the 2015-2016 administrative

review of the antidumping duty order on PET film from India.  *See* Selection of

Respondents for Individual Examination (Nov. 2, 2016) at 5, CR 3, P.R. 16, CJA Tab 4,

PJA Tab 4.  In its response to Section B of Commerce's initial questionnaire, Jindal

stated that it provides the following post-sale billing adjustments, discounts, and rebates

to its customers:

> Short Billing Adjustment (BILLADJ1H)
> Excess Billing Adjustment (BILLADJ2H)
> Early Payments Discount (EARLYPYH)
> Quantity Discount (REBATE1H)
> Financing Charge Discount (REBATE3H)
> VAT/CST Discount (REBATE4H)
> Monthly Rebate & Other Credit Notes (REBATE5H)
> Exclusive Dealer Discount (REBATE6H)

Initial Sec. B and C Questionnaire Resp. of Jindal (Dec. 20, 2016) ("Sec. B Resp.") at

27-38, CR 19-21, PR 43, CJA Tab 5, Suppl. CJA Tab 1, PJA Tab 5, Suppl. PJA Tab 1.

Jindal claimed that its post-sale discounts are "within the scope of accepted price

adjustments" because they "are known to its customers at the time the sale is made"

and "these adjustments have been granted by [Commerce] in previous administrative

reviews with respect to Jindal."  *Id.* at 32.  Jindal provided a sample copy of its sales

policy that included the terms of the claimed adjustments as well as various exhibits

purporting to reflect sample calculations of the rebates and copies of credit notes.  *See*

*id.*, Exs. B-16—B-26.

Commerce published its preliminary results on August 7, 2017.  *Polyethylene*

*Terephthalate Film, Sheet, and Strip from India*, 82 Fed. Reg. 36,735 (Dep.'t Commerce

Aug. 7, 2017) (prelim. results and partial rescission of antidumping duty admin. review;

2015–2016) (*"Preliminary Results"*).  In the Decision Memorandum accompanying the

*Preliminary Results*, Commerce stated that "in accordance with 19 C.F.R. [§]

351.401(c), we made adjustments for discounts and rebates."  Decision Mem. for

Prelim. Results and Partial Rescission of Antidumping Duty Admin. Review (July 31,

2017) at 12, PR 68, CJA Tab 7, PJA Tab 7; *see also id.* at 7.  Commerce did not identify

therein which normal value price adjustments it made or provide further discussion or

analysis regarding Plaintiff's claimed adjustments.  Commerce released the home

market Statistical Analysis Software ("SAS") program log in conjunction with its

preliminary analysis memorandum, which provided the following information:

> 7809 HMGUPADJ = (BILLADJ1H + BILLADJ2H + . . .); /* Price
> adjustments to be added to HMGUP */
>
> 7810 HMDISREB = EARLPYH + REBATE5H; /* Discounts, rebates &
> other price */
>
> 7811 /* adjustments to be subtracted from HMGUP - Post-sale price
> adjustments are not allowed */

Jindal's Prelim. Home Market SAS Program Log (Aug. 11, 2017) ("Prelim. SAS Log") at

91, CR 126, CJA Tab 9, PJA Tab 9; *see also* Analysis Mem. for the Prelim. Results

(July 31, 2017) at 4, CR 63, PR 123, CJA Tab 8, PJA Tab 8.

On August 23, 2014, Plaintiff filed a letter with Commerce asking the agency to

either explain why it had denied Plaintiff's reported price adjustments or issue a

supplemental questionnaire to Plaintiff to "clarify the record of this case" since

Commerce had granted Jindal's reported price adjustments "in all prior reviews."  Req.

for Clarification of Prelim. Results of Review (Aug. 23, 2017) ("Pl.'s Req. for

Clarification") at 2, PR 65, CJA Tab 10, PJA Tab 10.  Commerce responded that it had

inadvertently omitted a footnote from its preliminary memoranda indicating that Jindal

"did not meet the criteria . . . for post-sale rebates and adjustments" because its

responses to the agency's initial questionnaire "did not provide information on any of the

[] factors" set forth in *Modification of Regulations Regarding Price Adjustments in*

*Antidumping Duty Proceedings,* 81 Fed. Reg. 15,641 (Dep't Commerce, Mar. 24, 2016)

(final rule) ("*Final Modification*").  Letter from Commerce to Jindal Re: 2015-2016 Admin.

Review of PET Film from India (Sept. 25, 2017) ("Sept. 25, 2017 Letter") at 1 & nn.1-2,

PR 74, CJA Tab 11, PJA Tab 11.

Two days later, Plaintiff submitted its case brief to the agency arguing that (1)

Commerce's preliminary decision to deny Jindal's post-sale price adjustments without

adequate explanation was arbitrary and capricious and unsupported by substantial

evidence; (2) Jindal's Section B responses addressed the *Final Modification* factors;

and (3) Commerce was statutorily required to issue a supplemental questionnaire to

provide Jindal an opportunity to cure any purported deficiencies in its responses.

Admin. Case Br. (Sept. 27, 2017) ("Pl.'s Admin. Case Br.") at ECF pp. 110-11, PR 76,

CJA Tab 12, PJA Tab 12.  Jindal requested that Commerce either explain the reasons

for denying its reported post-sale price adjustments and permit supplemental briefing to

address the issue or issue a supplemental questionnaire to Jindal.  *Id.* at ECF p. 112-

13.

      Commerce published its final results on February 13, 2018.  *See Final Results*.

Commerce explained that it granted the following post-sale price adjustments in

accordance with the *Preliminary Results*: Payment Discount (EARLPYH), Short Billing

Adjustment (BILLADJ1H), Excess Billing Adjustment (BILLADJH2H) and Monthly/Other

Credit Notes Rebate (REBATE5H).  Analysis Mem. for the Final Results (Feb. 6, 2018)

("Final Analysis Mem.") at 2-4, CR 144, PR 82, CJA Tab 13, PJA Tab 13.  For the final

results, Commerce also granted the Quantity Discount (REBATE1H) and VAT/CST

Discount (REBATE4H) "because: 1) the terms were set prior to the sales, 2) proper

timing of the adjustment, and 3) a showing of legitimate transactions."  I&D Mem. at 3;

*see also* Final Analysis Mem. at 1, 5.  However, Commerce denied two remaining

adjustments—Financing Charges Discount (REBATE3H) and Exclusive Dealer

Discount (REBATE6H)—stating:

> We continue to determine that the information on the administrative record
> does not meet the criteria spelled out in the *Final Modification*. The
> Financing Charges Discount does not meet the criteria (1) where terms
> and conditions were set prior to sale; (3) the timing of the adjustment; and
> (5) any other factors tending to reflect on the legitimacy of this claimed
> adjustment, specifically the business sense of this adjustment. The
> Exclusive Dealer Discount also does not meet the criteria (1) where terms

and conditions were set prior to sale; (3) the timing of the adjustment; and
(5) any other factors tending to reflect on the legitimacy of this claimed
adjustment, specifically the business sense of this adjustment. . . . [T]he
burden is on the respondent [to] provide information relevant to support its
questionnaire response.

Final Analysis Mem. at 6.

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction pursuant to § 516A(a)(2)(B)(iii) of the Tariff Act of 1930,

as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[2] and 28 U.S.C. § 1581(c).  The

court will uphold Commerce's determination if it is supported by substantial evidence on

the record and in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  In reviewing

whether substantial evidence supports Commerce's determination, the court asks

whether there was "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Huaiyin Foreign Trade Corp. (30) v. United States*,

322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938)).  This standard requires that Commerce "examine the record and

articulate a satisfactory explanation for its action."  *Yangzhou Bestpak Gifts & Crafts

Co., Ltd. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013).  While the court will

uphold a determination of less than ideal clarity, "the path of Commerce's decision must

be reasonably discernable to [the] court."  *NMB Singapore Ltd. v. United States*, 557

F.3d 1316, 1319 (Fed. Cir. 2009); *see also CS Wind Vietnam Co., Ltd. v. United States*,

---

[2] All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S.
Code, 2012 edition, and all references to the United States Code are to the 2012
edition, unless otherwise stated.

832 F.3d 1367, 1377 (Fed. Cir. 2016) (the agency's experience and expertise are not a

substitute for the required explanation).

DISCUSSION

I.   **Commerce's Denial of Two Post-Sale Price Adjustments**

   A.  **Legal Framework**

   To determine whether subject merchandise is being sold at less than fair value,

Commerce compares the export price or constructed export price of the subject

merchandise to its normal value.  *See generally* 19 U.S.C. § 1673 *et seq.*  The statute

directs Commerce to calculate normal value using the "price at which the foreign like

product is first sold . . .  for consumption in the exporting country."  *Id.*

§ 1677b(a)(1)(B)(i).  Commerce's regulations further direct the agency to use a price for

normal value that "is net of price adjustments, as defined in § 351.102(b), that are

reasonably attributable to the . . .  foreign like product."  19 C.F.R. § 351.401(c) (2016).

   The regulations define a "price adjustment" as "a change in the price charged for

. . . the foreign like product, such as a discount, rebate, or other adjustment, including,

under certain circumstances, a change that is made after the time of sale (*see*

§ 351.401(c)), that is reflected in the purchaser's net outlay."  *Id.* § 351.102(b)(38).

Commerce does "not accept a price adjustment that is made after the time of sale

unless the interested party demonstrates . . . its entitlement to such an adjustment."  *Id.*

§ 351.401(c).[3]   When it adopted this version of the regulations, Commerce also

discussed, in the preamble, a non-exhaustive list of factors that it may consider in

determining whether an interested party has demonstrated entitlement to a post-sale

price adjustment.  *Final Modification*, 81 Fed. Reg. at 15,644-45.  Those factors are:

> (1) [w]hether the terms and conditions of the adjustment were established and/or
> known to the customer at the time of sale, and whether this can be demonstrated
> through documentation; (2) how common such post-sale price adjustments are
> for the company and/or industry; (3) the timing of the adjustment; (4) the number
> of such adjustments in the proceeding; and (5) any other factors tending to reflect
> on the legitimacy of the claimed adjustment.

*Id.*

### B.  Parties' Arguments

Plaintiff argues that Commerce failed to articulate its reasons for granting certain

adjustments and denying others, and this failure renders Commerce's decision

unsupported by substantial evidence and contrary to law.[4]  Pl.'s Br. at 9, 11. Plaintiff

contends that Commerce's decision with respect to the first factor—whether the terms

of the adjustment were set or known to the customer at the time of sale—is internally

inconsistent because Plaintiff provided the same sample copy of its sales policy for all

the claimed adjustments.  *See id.* at 10; Pl.'s Reply at 4.  With respect to the third and

---

[3] The agency modified 19 C.F.R. § 351.401(c) in 2016 to add this sentence after the
court, in *Papierfabrik Aug. Koehler AG v. United States*, 38 CIT ___, 971 F. Supp. 2d
1246, 1251-57 (2014), held that Commerce's decision to reject certain post-sale price
adjustments, when the customer was not aware of the adjustment at the time of sale,
contravened the plain language of 19 C.F.R. §§ 351.401(c) and 351.102(b)(38).  *See
Final Modification*, 81 Fed. Reg. at 15,642.  Commerce also refined its definition of price
adjustment in 19 C.F.R. § 351.102(b)(38) in the *Final Modification*.  *Id.*
[4] Plaintiff does not challenge the regulation itself.

fifth factors—the timing of the adjustment and any factor "tending to reflect on the legitimacy of the claimed adjustment"—Plaintiff contends that Commerce's decision fails to explain Commerce's path of reasoning and why Plaintiff's questionnaire responses were insufficient to satisfy these criteria.  Pl.'s Br. at 10-11; Pl.'s Reply at 4-5.

The Government contends that Jindal, as the party claiming the adjustment, failed to meet its burden of establishing eligibility for the adjustment.  Def.'s Br. at 10. According to the Government, Jindal failed to provide evidence regarding the first and third factors and failed to explain whether the discounts "were legitimate adjustments." *Id.* at 11.  The Government further contends that "Jindal did not offer any specific arguments with respect to individual post-sale adjustments in its case brief."  *Id.* at 11 (quoting I&D Mem. at 2 n.6).

### C. Commerce Failed to a Provide Reasoned Explanation for Denying the Post-Sale Price Adjustments

Commerce has not provided the required explanation for its determination to allow the court to apply the standard of review.  Commerce's entire analysis for denying the two post-sale price adjustments is comprised of conclusory statements that the adjustments did not satisfy the first, third, and fifth "criteria" listed in the *Final Modification*.  *See* I&D Mem. at 3; Final Analysis Mem. at 6.  Commerce did not explain why the adjustments do not meet the "criteria" or how Commerce evaluated the factors

in the *Final Modification*.  Nor did Commerce discuss the evidence which Jindal

supplied in support of its claims.[5]

Regarding the first factor, the Government argues that Jindal failed to support its

claim that "the terms and conditions of the adjustment[s] were established and/or known

to the customer at the time of sale" with supporting "documentation."  Def.'s Mem. at 11

(quoting *Final Modification*, 81 Fed. Reg. at 15,645).  In its Section B response,

however, Jindal stated that all its claimed adjustments "are known to its customers at

the time the sale is made and[,] in many situations, the customers have been availing of

the price adjustments for several years."  Sec. B Resp. at 32.  Jindal also provided the

same sample copy of its sales policy for all the claimed adjustments, including the two

that Commerce denied.  *Id.* at 31-32 & Ex. B-16.  Commerce did not explain why that

documentation sufficed for some of the claimed adjustments but not others.[6]

---

[5]  Defendant's contention that Jindal failed to make any "specific arguments with respect
to individual post-sale adjustments in its case brief," Def.'s Br. at 11 (quoting I&D Mem.
at 2 n.6), is unpersuasive because Jindal argued in its case brief that its Section B
questionnaire responses addressed the *Final Modification* factors, Pl.'s Admin. Case Br.
at ECF p. 111.  Jindal also urged Commerce on two separate occasions to provide a
detailed explanation for denying the adjustments so that it could better tailor its
arguments to address Commerce's concerns.  *See* Pl.'s Req. for Clarification; Pl.'s
Admin. Case Br. at ECF p. 112.  Commerce did not.

[6]  Furthermore, Jindal explained the circumstances in which it offers the Financing
Charge Discount and the Exclusive Dealer Discount and provided sample rebate
calculations and copies of credit notes, as supporting documentation.  *See* Sec. B
Resp. at 34-38 & Exs. B-19, B-20, B-25, B-26.  The documentation that Jindal provided
was the same as that provided to support the six other claimed adjustments that
Commerce granted.  *See id.*, Exs. B-16—B-26.  Although Commerce decided to grant
some adjustments and deny others, it did not explain sufficiently its reasoning.

Regarding the fifth factor, the Government contends that Jindal failed to establish that the Exclusive Dealer Discount and Financing Charge Rebate Discount "had a legitimate business purpose," like the other six adjustments that Commerce granted. Def.'s Br. at 12 (citing Final Analysis Mem. at 3-6).  However, Commerce only addressed this factor for three of the six adjustments that it granted, and even then, it only made a specific finding regarding that factor for *one* of the adjustments.  *See* Final Analysis Mem. at 3-5.[7]  Before the court, the Government claims that "Jindal explained the business purpose" for all of the adjustments that Commerce did not address, Def.'s Br. at 13 (citing Sec. B Resp. at 27-29); however, Commerce did not cite or rely on the explanations provided in the brief and, more importantly, Commerce did not explain why Jindal's explanations for the two denied adjustments were distinct from the other explanations.[8]

The non-exhaustive list of factors in the *Final Modification* is not a rigid set of criteria; Commerce "may consider any one or a combination of the[] factors in making its determination," and that determination "may be made on a case-by-case basis and in light of the evidence and arguments on each record."  *Final Modification*, 81 Fed. Reg. at 15,645.  However, Commerce must explain that determination and the determination

---

[7] Commerce granted the Early Payments Discount, Excess Billing Adjustment, and the Short Billing Adjustment even though it did not make a finding concerning the "business sense" of these adjustments.  *See* Final Analysis Mem. at 3-4.  Moreover, Commerce granted the Short Billing Adjustment based only on a finding that it met factors (2) and (3).  *Id.* at 4.

[8] The Government's attempt to provide *post hoc* explanation for the distinction must fail. *See* Def.'s Br. at 11-13.

must be supported by substantial evidence on the record.  Based on Commerce's

conclusory statements, the court cannot discern the path of Commerce's decision-

making nor determine that it is supported by substantial evidence.  *See NMB Singapore*

*Ltd.*, 557 F.3d at 1319 ("[W]hile its explanations do not have to be perfect, the path of

Commerce's decision must be reasonably discernable to a reviewing court."); *see also*

*CS Wind*, 832 F.3d at 1377.  Therefore, this matter must be remanded for Commerce to

reconsider Jindal's claims for post-sale price adjustments for Exclusive Dealer

Discounts and Financing Charge Rebate Discounts, taking account of the evidence and

arguments on record, and to provide the reasons supporting its redetermination.

## II.   Commerce's Decision Not to Issue to Jindal a Supplemental Questionnaire

### A.  Legal Framework

Pursuant to 19 U.S.C. § 1677m(d), if Commerce:

> determines that a response to a request for information . . . does not
> comply with the request, [Commerce] shall promptly inform the person
> submitting the response of the nature of the deficiency and shall, to the
> extent practicable, provide that person with an opportunity to remedy or
> explain the deficiency in light of the time limits established for the
> completion of investigations or reviews.

If the respondent's subsequent submission is also deficient or untimely, Commerce may

"disregard all or part of the original and subsequent responses," subject to section

1677m(e).  *Id.* § 1677m(d)(1)-(2).  Section 1677m(e) provides that Commerce may not

"decline to consider information that is . . . necessary to the determination but does not

meet all the applicable requirements" when the information is timely submitted; "the

information can be verified"; "the information is not so incomplete that it cannot serve as

a reliable basis for reaching the applicable determination"; the proponent of the information "has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by [Commerce]"; and "the information can be used without undue difficulties." *Id.* § 1677m(e).

As noted above, in addition to these statutory obligations placed on the agency, Commerce has regulated that it "will not accept a price adjustment that is made after the time of sale unless the interested party demonstrates, to the satisfaction of [the agency], its entitlement to such an adjustment." 19 CFR § 351.401(c).

### B.  Parties' Arguments

Plaintiff asserts that Commerce was required to issue a supplemental questionnaire if it found Jindal's questionnaire response regarding the two price adjustments to be inadequate.  Pl.'s Br. at 15.  Plaintiff also complains that Commerce did not provide adequate notice of the specific information required to receive a post-sale price adjustment pursuant to the methodology announced in the *Final Modification*. *Id.* at 15-16.  The Government argues that Commerce did not request that Jindal claim eligibility for a post-sale price adjustment and, therefore, Jindal did not submit a deficient response within the meaning of 19 U.S.C. § 1677m(d).  Def.'s Br. at 18.  The Government also argues that Commerce was not obligated to issue a supplemental questionnaire and did not rely on facts otherwise available to calculate a price adjustment; instead, Commerce merely refused to grant the adjustment.  *Id.*

### C. Commerce Must Provide Jindal an Opportunity to Clarify or Supplement its Questionnaire Responses

Commerce's failure to articulate its reasoning for denying two of Jindal's post-sale price adjustments limits the court's ability to review whether an alleged deficiency in Jindal's questionnaire response was a factor in Commerce's decision making. Nevertheless, for the reasons discussed below, if Commerce determined that Plaintiff's questionnaire response was deficient in some regard, or that Commerce needed clarification of the response regarding the adjustments, the agency should have issued a supplemental questionnaire to Plaintiff.

Commerce stated that it was denying certain post-sale price adjustments in the *Preliminary Results* because Jindal's questionnaire responses "did not provide information on any of the [] factors" laid out in the *Final Modification*. Sept. 25 Letter at 1. This statement is inaccurate[9] and Plaintiff subsequently made two efforts to obtain clarification as to how Commerce interpreted the *Final Modification* factors and what additional information was necessary to satisfy those factors. *See* Pl.'s Req. for Clarification; Pl.'s Admin. Case Br. at ECF p. 112.

It is undisputed that a respondent seeking a post-sale price adjustment to normal value bears the burden of establishing its entitlement to such adjustment. *See Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1040 (Fed. Cir. 1996). This burden properly rests with the respondent because it is the party in possession of "the necessary

---

[9] Indeed, Plaintiff attempted to address the *Final Modification* factors through both narrative responses and documentary evidence. *See* Sec. B Resp. at 27-38 & Exs. Exs. B-16—B-26.

information." *Id.* at 1040.  However, this placement of the burden comes with an

understanding that a respondent has sufficient notice of what information is considered

necessary to allow it to meet its burden.  Although the preamble to the *Final*

*Modification* contained a list of factors Commerce may consider to determine whether to

grant a post-sale price adjustment, Commerce indicated that it would apply these

factors on a case-by-case basis in light of the evidence and arguments on the record.

*See Final Modification*, 81 Fed. Reg. at 15,644-45.  While Commerce may conduct such

a case-by-case analysis, it may not fail to engage with a respondent attempting to

address the factors in good faith.  Under these circumstances, in which Jindal

responded to Commerce's questions regarding price adjustments and attempted to

address the *Final Modification* factors, Commerce was obligated to inform Jindal of the

nature of any deficiency and, to the extent practicable, provide Jindal with an

opportunity to remedy or explain the deficiency.  *See* 19 U.S.C. § 1677m(d).

  The court is unpersuaded by the Government's argument that section 1677m(d)

is inapplicable because Commerce did not specifically request Plaintiff to establish

entitlement to these post-sale price adjustments and, thus, Plaintiff's response did not

fail to comply with a request for information.  Def.'s Br. at 18.  In Section B of the initial

questionnaire, Commerce requested that Jindal "report the unit value of each rebate

given," "explain [its] policy and practice for granting rebates," and "describe the terms

and conditions of each rebate program and when the terms and conditions are

established in the sales process."  *See* Sec. B Resp. at 31.  Jindal reported the post-

sale price adjustments in response to this request.

The Government's reliance on *ABB, Inc. v. United States*, 41 CIT __, 273 F.

Supp. 3d 1200 (2017) for its claim that Commerce is not required to issue a

supplemental questionnaire to a respondent seeking a favorable adjustment that fully

complied with an information request, *see* Def.'s Br. at 19; Oral Arg. at 26:48-27:16, is

unavailing.[10]   In *ABB*, the respondent mislabeled its data, did not attempt to fix the

alleged labeling error prior to Commerce issuing its final determination, and did not

identify its own error until it filed ministerial error allegations.  273 F. Supp. 3d at 1211-

12.  The issue in *ABB* was whether Commerce was required to correct the alleged error,

not whether it was obligated to issue a supplemental questionnaire.  *ABB*, therefore, is

readily distinguished.

The Government might have considered *ABB, Inc. v. United States*, Slip Op. 18-

156, 2018 WL 6131880 (CIT Nov. 13, 2018) to be slightly more relevant.  *See* Oral Arg.

at 35:40-36:00 (quoting language from *ABB*, 2018 WL 6131880, at *11).  There, the

court agreed with the Government that Commerce was not obligated to issue a

supplemental questionnaire pursuant to 19 U.S.C. § 1677m(d).  That case, however, is

also distinguishable because the court found that "[i]nherent in the requirement of

§ 1677m(d) is a finding that Commerce was or should have been aware of the

deficiency in the questionnaire response" and the respondent was the only party with

the ability to determine that its questionnaire response was deficient.  *Id.* at *11.  Here,

the situation is just the opposite—Commerce was the only party that could have been

---

[10] Citations to the oral argument reflect time stamps from the recording.

aware of the deficiency in the questionnaire response because it was the only

participant in the review that knew what would satisfy its unarticulated criteria.

Even if Commerce determined that Jindal fully complied with a request for

information, but Commerce did not understand the information, Commerce had the

opportunity to issue a supplemental questionnaire seeking clarification of any

ambiguities in the information.  The Government's brief and statements at oral argument

indicate that Commerce might have benefitted from a request for clarification of certain

information in Jindal's responses and documentation Jindal submitted.  *See* Def.'s Br. at

11-12 (selecting several quotes from Jindal's Section B responses and arguing that

Jindal "did not explain" what it meant by them); Oral Arg. at 40:15-40:38, 40:50-41:16

(making similar arguments and stating that Jindal's responses were unclear and "not

intelligible" to Commerce); *id.* at 23:06-23:14 (arguing that it was not clear whether

Jindal had shared its sales policy with anyone).

Commerce is obligated "to carry out its statutory duty of 'determining dumping

margins as accurately as possible.'"  *Huzhou Muyun Wood Co., Ltd. v. United States*,

41 CIT __, __, 279 F. Supp. 3d 1215, 1224 (2017) (quoting *NTN Bearing Corp. v.*

*United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995)).  As stated above, Commerce must

calculate normal value using the "price at which the foreign like product is first sold . . .

for consumption in the exporting country," 19 U.S.C. § 1677b(a)(1)(B)(i), and which is

net of price adjustments, 19 C.F.R. §§ 351.401(c), 351.102(b)(38).  By declining to

issue a supplemental questionnaire seeking clarification of the information Jindal

provided to support its claims for the post-sale price adjustments, Commerce

unreasonably declined a downward adjustment to normal value when a simple

clarification may have cured Commerce's lack of understanding.

Accordingly, on remand, Commerce must provide Jindal an opportunity to clarify

or supplement its responses to address Commerce's application of the *Final*

*Modification* in this case with respect to the Exclusive Dealer Discount and Financing

Charges Discount.

## III.   Jindal's Procedural Due Process Claim

### A.  Legal Framework

When Commerce makes a preliminary determination in an administrative review,

it must "publish the facts and conclusions supporting that determination" and "publish

notice of that determination in the Federal Register."  19 U.S.C. § 1677f(i)(1).  The

notice or determination must include, "to the extent applicable . . . a full explanation of

the methodology used in establishing [the weighted average dumping] margins" and

"the primary reasons for the determination." 19 U.S.C. § 1677f(i)(2)(A)(iii)(II), (iv).

Thereafter, interested parties may submit case briefs setting forth arguments relevant to

the agency's final results.  *See* 19 C.F.R. § 351.309(c)(1)(ii), (2).  The U.S. Court of

Appeals for the Federal Circuit has stated that an importer participating in an

administrative review has a due process right to "notice and a meaningful opportunity to

be heard."  *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761–62 (Fed.

Cir. 2012) (quoting *LaChance v. Erickson*, 522 U.S. 262, 266 (1998)).

### B.  Parties' Arguments

Plaintiff contends that Commerce's failure to provide an adequate explanation for

its decision in the *Preliminary Results* deprived Jindal of its due process rights and an

opportunity to comment meaningfully on the preliminary decision.  Pl.'s Br. at 13.  The

Government responds that Commerce identified the adjustments that it granted in the

preliminary SAS Log and explained the legal basis for its decision in the September 25,

2017 letter in response to Jindal's request.  Def.'s Br. at 15 (citing Prelim. SAS Log. At

91; Sept. 25, 2017 Letter).  It further argues that Jindal received and used its

opportunity to file a brief pursuant to 19 C.F.R. § 351.309(c)(1)(i).  *Id.*  At oral argument,

Plaintiff conceded that if the court remands the determination for Commerce to

reconsider the two price adjustments, Plaintiff's due process claim is moot.  Oral Arg. at

17:17-17:37.

### C.  Jindal's Procedural Due Process Claim is Moot

Jindal's claim that it was deprived of notice and meaningful opportunity to be

heard is moot as a result of the court's remand order.  Jindal has made its objections to

Commerce's determination and Commerce must now reconsider its determination in

light of those objections.  No further remedy would be available to Jindal if the court

were to agree with its due process claim.

### CONCLUSION

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's *Final Results* are remanded so that Commerce

may reconsider or further explain its denial of the Financing Charge Discount and the

Exclusive Dealer Discount price adjustments in accordance with Discussion sections I

and II above;

      **ORDERED** that Commerce shall file its remand results on or before June 10,

2019; and it is further

      **ORDERED** that subsequent proceedings shall be governed by USCIT Rule

56.2(h); and it is further

      **ORDERED** that any comments or responsive comments must not exceed 5,000

words.

                                  /s/     Mark A. Barnett
                                  Mark A. Barnett, Judge

Dated: March 11, 2019
       New York, New York